The document below is hereby signed.

Signed: January 20, 2015



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MICHAEL LAWRENCE ROSEBAR, | ) | Case No. 13-00535 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DAVID BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 13-10036 |
| MICHAEL LAWRENCE ROSEBAR, | ) | |
| | ) | **Not for Publication in** |
| Defendant. | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER
RE BROOKS'S MOTION FOR SUMMARY JUDGMENT

The plaintiff Brooks seeks to deny the defendant Rosebar a discharge and to obtain a declaration that certain debts are non-dischargeable.  Brooks has filed a motion for summary judgment as to four counts of the complaint.  For the reasons discussed below, the court will grant summary judgment on Brooks's motion as to Count VI, seeking to deny the defendant Rosebar a discharge under 11 U.S.C. § 727(a)(3), thus making it unnecessary to reach

a decision on Brooks's motion as to the three other counts.  The denial of a discharge moots as well the remaining counts of the complaint[1] because there is no need to deny a discharge on other grounds or to declare a debt to be non-dischargeable if a discharge *had* been granted.  Accordingly, the grant of summary judgment will be entered as a final judgment disposing of this adversary proceeding.

I

Summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056).  Whether a fact is material is determined by looking to the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In evaluating a motion for summary judgment, the court must

---

[1] Two counts of the complaint were already dismissed without prejudice (see Dkt. No. 16).  All that remained were counts seeking to deny Rosebar a discharge and to declare certain debts to be non-dischargeable.

view the evidence in the light most favorable to the nonmoving party.  *Arrington v. U.S.*, 473 F.3d 329, 333 (D.C. Cir. 2006).

The applicable rules impose strict evidentiary requirements for the moving and opposing parties.

> A party asserting that a fact cannot be or is genuinely dispute must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .  The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P. 56(c).  In addition, Local Rule 7(h) of the U.S. District Court for the District of Columbia (made applicable by Local Bankruptcy Rule 7056-1) provides:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement.  An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement. . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

A trial court judge

> should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not, be a genuine issue of material

3

> disputed fact . . . . [and a trial court] may
> legitimately look to and rely upon counsel to identify
> the pertinent parts of the record, to isolate the facts
> that are deemed to be material, and to distinguish
> those facts which are disputed from those that are
> undisputed.

Twist v. Meese, 854 F.2d 1421, 1425 (D.C. Cir. 1988).

II

Brooks, as part of his motion for summary judgment, submitted a 14-page Statement of Material Facts Not in Dispute, supported by citations to a sworn affidavit of himself, 342 pages of exhibits (including affidavits from other persons), and other case filings in this adversary proceeding and in the main bankruptcy case.  Rosebar's opposition brief does not contain a "separate concise statement of genuine issues [including] references to the parts of the record relied on to support the statement," but it contains its own 4-page Statement of Material Facts Not in Dispute as well as factual representations in the body of the brief.  Rosebar's Statement of Material Facts and factual representations in his brief are unsupported by any citation to the record or exhibits; however, attached to the opposition brief is a sworn affidavit of Michael Rosebar.

The court addresses only the request for summary judgment as to Count VI, seeking a denial of discharge under § 727(a)(3). The court must view the evidence pertinent to Count VI in the light most favorable to Rosebar.  The evidence includes portions of Rosebar's affidavit relevant to Count VI.  It also includes

facts relevant to Count VI alleged by Brooks in his Statement of Material Facts Not in Dispute ("Brooks Statement") that are properly supported by Brooks's affidavit, exhibits, and citations to the record.  These facts are uncontroverted by Rosebar's affidavit (or by any citations by Rosebar to the record) and are therefore deemed admitted.  The court will not give credence to any representations contained in Rosebar's Statement of Material Facts Not in Dispute or elsewhere in Rosebar's brief, to the extent that such representations controvert Brooks's facts but are unsupported by any citation to affidavit, exhibit or the record.

　　　Viewing the evidence in the light most favorable to Rosebar, these are the material facts as to which there is no genuine dispute.  Rosebar has operated a construction contracting business for 20 years.  Brooks Statement ¶ 6; Rosebar Schedule I (Dkt. No. 24 in Case No. 13-00535).  He is a sole proprietor in the home improvement industry.  Rosebar Opp. Br., ¶ 46.  At some point, he formed an LLC called EMR Construction LLC.  Brooks Statement ¶ 7; Brooks Affidavit ¶ 8; Exhibit D to Brooks Motion (LLC certificate).  Between February 1, 2012, and August 1, 2013, Rosebar received more than $220,000 in income (as reflected by checks to Rosebar and checks to EMR Construction LLC cashed by Rosebar), checks which Brooks discovered after serving subpoenas on various financial institutions.  Brooks Statement ¶ 26; Brooks

Affidavit ¶ 22; Exhibit R to Brooks Motion (Affidavit of Andrea Bowens, custodian of records of ACE Cash Express, Inc., and attached 167 pages of records including copies of checks). One of Rosebar's clients was Cameron St. Clair, a partner at Rincon Real Estate Group, Inc., who hired Rosebar and his wife (who were claiming to be doing business as E&R HVAC Co. LLC) to perform renovations at various properties. Brooks Statement ¶ 27; Brooks Affidavit ¶ 23; Exhibit S to Brooks Motion (Affidavit of Cameron St. Clair and thereto attached contracts and documents). Ms. St. Clair wired Rosebar and his wife $58,800 in 2013, but Rosebar and his wife did not complete the work required by the contract. *Id.* Ms. St. Clair later discovered that E&R HVAC Co. LLC did not exist. *Id.*

Rosebar owns or has owned multiple properties in Washington, DC, including 40 Bryant Street NW, 1212 Kirby Street NW, 1258 Meigs Street NE, and 23 Bryant Street NW, as well as a property in Chaptico, Maryland, at 22801 Pleasant Lane. Brooks Statement ¶ 8; Brooks Affidavit ¶ 9, 15; Exhibit E to Brooks Motion (deed for 23 Bryant Street NW); Amended Schedule A (Dkt. No. 62, Case No. 08-00345); Amended Schedule A (Dkt. No. 143, Case No. 13-00535). Two of these properties (1212 Kirby Street NW and 22801 Pleasant Lane) are rental/investment properties. Amended Schedule A (Dkt. No. 143, Case No. 13-00535).

On November 25, 2013, the court issued an order in the main

bankruptcy case requiring Rosebar to produce 24 categories of documents including:

> 6. Records demonstrating how you computed your current income.
> 7. Receipts for every purchase or expenditure over $100 that you made from January 1, 2010 to the present.
>
> \* \* \*
>
> 9. Records of all payments that you or your business made to employees and/or independent contractors from January 1, 2010 to the present.
> 10. Records of all materials, supplies, tools, fixtures and equipment you have bought from January 1, 2010 to the present.

Brooks Statement ¶ 5; Brooks Affidavit ¶ 6 (excerpting Dkt. No. 61 in Case No. 13-00535). Rosebar did not produce any records of his income or expenses in response to the court's order. Brooks Statement ¶ 5; Brooks Affidavit ¶ 7. Rosebar did not identify any business or personal expenses in his responses to Brooks's interrogatories. Brooks Statement ¶ 71; Brooks Affidavit ¶ 47; Exhibit N to Brooks Motion (Rosebar's responses to Brooks's interrogatories and requests for admissions). In fact, Rosebar admitted that he does not keep books and records of his business transactions at all:

> Q: Do you keep books and records of your business transactions?
> A: No, Not at all, not really. Not at all.

Brooks Statement ¶ 4; Brooks Affidavit ¶ 5; Exhibit C to Brooks Motion (excerpted transcript of Rosebar's Rule 2004 Examination, Dec. 23, 2013, pp. 127-28).

7

In response to Brooks's motion for summary judgment, Rosebar in his affidavit states that he gave "all of [his] financial information and receipts" to the person who prepares his taxes. Rosebar Affidavit ¶ 7-8.

### III

Under the Bankruptcy Code, a debtor is entitled to discharge in the absence of a statutory exception. One such exception is found at 11 U.S.C. § 727(a)(3), which provides:

> (a) The court shall grant the debtor a discharge, unless–
> . . .
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act for failure to act was justified under all of the circumstances of the case[.]

The purpose of this provision is to give the court, trustee, and creditors "complete and accurate information" to enable them "to ascertain the debtor's financial history and record," which is a "condition precedent" to a grant of a discharge. *Sackett v. Shahid (In re Shahid)*, 334 B.R. 698, 706 (Bankr. N.D. Fla. 2005); *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 576 (Bankr. N.D. Ill. 2000); *Fed. Dep. Ins. Corp. v. Kottwitz (In re Kottwitz)*, 42 B.R. 566, 569 (Bankr. W.D. Mo. 1984). This provision does not require the plaintiff to show an intent to conceal by the debtor. *Davis v. Wolfe (In re Wolfe)*, 232 B.R. 741, 745 (8th Cir. BAP 1999); *Senese*, 245 B.R. at 576. Rather,

the question is whether the debtor's records are adequate to allow the tracing of the debtor's financial dealings. *Senese*, 245 B.R. at 576. Creditors should not be required to speculate as to the debtor's financial history or reconstruct the debtor's financial affairs. *Shahid*, 334 B.R. at 707 (citing *In re Juzwiak*, 89 F.3d 424 (7th Cir. 1996)); *Aid Auto Stores, Inc. v. Pimpinella (In re Pimpinella)*, 133 B.R. 694, 698 (Bankr. E.D.N.Y. 1991).

Rosebar received income as a building contractor, as reflected by checks Brooks uncovered via subpoenas to financial institutions. Some of that income was received via checks made payable to EMR Construction, the name of the LLC that Rosebar formed. The debtor's obligations under § 727(a)(3) are not limited to records belonging to the debtor or the estate but extend to all records relating to the debtor's financial affairs; this may include records of a closely-held corporation controlled by the debtor. *Bishop v. Kinard (In re Kinard)*, 518 B.R. 290, 302-303 (Bankr. E.D. Pa. 2014). Indeed, "corporate records may be the best measure of the debtor's financial condition . . . [where] there is a direct interface between a business person's personal finances and the finances of the corporation." *Gray v. Jackson (In re Jackson)*, 453 B.R. 789, 798 (Bankr. E.D. Pa. 2011) (quoting *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272, 307 (Bankr. E.D. Pa. 2006)); *see also In re Womble*, 289 B.R.

836, 857 (Bankr. N.D. Tex. 2003); *Jou v. Adalian (In re Adalian)*, 500 B.R. 402, 408 (Bankr. M.D. Pa. 2013). In any event, even if the finances of an LLC were treated as not dealing with a debtor's own financial condition, or if the record did not compel a finding that EMR Construction LLC is Rosebar's closely held corporation, Rosebar has supplied no records to explain his obvious connection with EMR Construction LLC (which he formed and whose checks he was cashing), including the details of that connection (what his role was and what his compensation was). Those details would bear on Rosebar's financial condition. In any event, aside from income received by Rosebar through EMR Construction LLC, there were checks made payable to Rosebar directly, and Rosebar failed to maintain records relating to *that* income.

The creditor objecting to discharge bears the initial burden to present evidence that the debtor failed to keep records and that this failure prevented the creditor from being able to evaluate the debtor's financial condition. *Graham Mort. Corp. v. Goff (In re Goff)*, 579 Fed. Appx. 240, 242 (5th Cir. 2014); *Wolfe*, 232 B.R. at 745. If the creditor meets this initial burden of production, the burden shifts to the debtor to show a justification "under all the circumstances" for his failure to keep adequate records. *Id.* For the debtor to meet that burden, he "must do more than profess a belief that his records were

sufficient or that it was not his practice to keep additional records." *Pimpinella*, 133 B.R. at 698 (citing *U.S. Fid. & Guar. v. Delancey (In re Delancey)*, 58 B.R. 762, 768 (Bankr. S.D.N.Y. 1986)). Rather, the debtor "must show that the circumstances were in fact so unusual that ordinary record keeping was not required." *Pimpinella*, 133 B.R. at 698 (citing *Am. Motors Leasing Corp. v. Morando (In re Morando)*, 116 B.R. 14, 16 (Bankr. D. Mass. 1990)).

Brooks has met his initial burden by (a) pointing to Rosebar's admission that Rosebar, a sole proprietor in the construction industry and the apparent owner of a construction-related LLC, did not keep books or records of his business transactions; (b) stating in his affidavit that Rosebar did not produce to him any records of his business income or expenses even after the court ordered him to do so; and (c) pointing to Rosebar's failure to identify any business or personal expenses in his responses to Brooks's interrogatories. Rosebar did not controvert these facts in his affidavit, and they have been deemed admitted.[2]

---

[2] Rosebar argues in his opposition brief that he gave Brooks "his tax returns, contracts and Bank Statements" and argues that these are adequate records because he "does not have extensive education" and is not "well versed in the management sciences." These representations are unsupported by *any* citation to the record and are not included in Rosebar's sworn affidavit, and the referenced documents are not attached as exhibits to the brief: such arguments are not evidence and do not create a fact issue.

Without adequate records, it is impossible for this court, the trustee, and creditors like Brooks to evaluate the debtor's financial condition.  There is no documentation of the funds paid to Rosebar by his clients and tenants, or the amounts expended by him for supplies and other expenses attendant to running a construction business or maintaining rental properties.  Brooks has managed to locate some information (including the name of a client, Cameron St. Clair, and the amount of funds she paid to Rosebar) and documents (the records of ACE Cash Express, Inc., including copies of checks written to Rosebar or EMR Construction LLC and cashed by Rosebar) but it is not Brooks's responsibility to piece together Rosebar's financial affairs.  Moreover, it would require inappropriate speculation on the court's part to determine whether the information and documents Brooks discovered comprise the entire universe of Rosebar's business transactions, especially because (even in the unlikely event that the St. Clair and ACE documents show all of Rosebar's business income) there is still no information about Rosebar's business expenses.

Rosebar states in his affidavit that he provided "all of [his] financial information and receipts" to his tax preparer, but this does not create an issue of fact.  He does not specifically state what records he gave to his tax preparer, and therefore his affidavit does not constitute evidence that any records exist in any form that would satisfy Rosebar's

obligations under § 727(a)(3).  *See, e.g.*, *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 884-85 (6th Cir. BAP 1999). Moreover, even if he had given to his tax preparer records adequate to satisfy his record-keeping obligations, Rosebar still runs afoul of § 727(a)(3) because he failed to provide such records to his creditors.

To the extent that Rosebar proffers this statement in his affidavit in order to provide a justification for not keeping and producing these limited records, he falls short.  He offers no explanation as to why he could not have simply retrieved these records from his tax preparer and produced them.  His mere statement that he gave information and receipts to his tax preparer does not show that the circumstances were "so unusual that ordinary record keeping was not required," and does not show that his financial condition and business transactions could be ascertained from these records.  Rosebar has failed to meet his burden to show justification under all the circumstances for his failure to maintain and produce these records and other records necessary to assure that he complied with the obligation to maintain records from which his financial condition and business transactions might be ascertained.

IV

The effect of § 727(a)(3) is to make full financial disclosure by the debtor a "condition precedent" to a discharge

13

in bankruptcy. *Shahid*, 334 B.R. at 708. Rosebar admitted that he did not keep records of his business transactions ("not at all"). His failure to keep and produce such records makes it impossible for his creditors, the trustee, and this court to evaluate his financial affairs. In addition, Rosebar fails to provide legal justification for his failure to keep and produce such records. Accordingly, it is

ORDERED that Brooks's motion for summary judgment is granted as follows: the objection of plaintiff Brooks to the discharge of Michael Rosebar pursuant to 11 U.S.C. § 727(a)(3) is SUSTAINED and the discharge of debts of Michael Rosebar will be DENIED in its entirety. It is further

ORDERED that Brooks's motion for summary judgment (Dkt. No. 44) is dismissed as moot to the extent not granted above.

A separate judgment follows.

[Signed and dated above.]

Copies to: Plaintiff; recipients of e-notifications of orders.